[Cite as *State v. Randolph*, 2022-Ohio-2909.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

    Appellee

v.

Antonio M. Randolph

    Appellant

Court of Appeals No.  L-21-1140

Trial Court No.  CRB-20-11063

**DECISION AND JUDGMENT**

Decided:  August 19, 2022

* * * * *

David L. Toska, City of Toledo Chief Prosecuting Attorney, and
Christopher D. Lawrence, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** This is an appeal by appellant, Antonio Randolph, from the July 20, 2021

judgment of the Toledo Municipal Court, after he was found guilty of criminal trespass.

For the reasons that follow, we reverse.

**{¶ 2}** Appellant sets forth two assignments of error:

I. Mr. Randolph's conviction for criminal trespass was not supported by sufficient evidence, or in the alternative was against the manifest weight of the evidence, because he was never served written notice that he was banned from the property, and therefore arguably did not know that he was violating a restriction [regarding] * * * his presence [on the property].

II. The trial court abused its discretion when it found Mr. Randolph guilty of criminal trespass when he arguably had privilege to be on the property for the purpose of visiting his uncle who was a lawful resident of the apartment complex.

## Facts

**{¶ 3}** On December 29, 2020, in the early evening, appellant and approximately 10 other people were gathered for a party in an apartment leased to appellant's uncle, Henry Randolph ("uncle"), at the Greenbelt Place Apartments ("Greenbelt") in Toledo, Ohio. Greenbelt property manager, Renee Freeman, received noise complaints from other tenants, so she and police officers, who were projecting at Greenbelt, went to the uncle's apartment. The uncle was not at his apartment for the festivities, but Freeman and the police encountered appellant, who had been told on numerous occasions by Freeman that he was not permitted on Greenbelt property. Appellant was arrested and

2.

charged with criminal trespass in violation of R.C. 2911.21, a fourth degree misdemeanor.

{¶ 4} A bench trial was held at which Freeman and appellant testified. Freeman testified to the following. She has worked at Greenbelt since 2019, and her role as Greenbelt manager includes "maintain[ing] the properties, the occupancy and living standards for my residents." She became aware of appellant within the first six months of working at Greenbelt. Initially, she noticed that appellant visited family at Greenbelt, then later, appellant was often found in vacant units. Freeman stated "[w]e are really struggling with keeping the homeless population out of our vacant units * * *. Unfortunately, [appellant] is one that is frequently found in a vacant unit." Although the empty apartments were locked, homeless people accessed the units "[t]hrough windows, broken windows, kicking doors in. Whatever means it takes."

{¶ 5} Freeman testified that beginning in June 2020, she told appellant many times that he was banned from Greenbelt property. In addition, appellant's name was on a list of people who were banned from Greenbelt property ("banned list"), which was posted on the window by the office door. On December 29, 2020, Freeman received complaints from other Greenbelt tenants about the partying, trash and noise coming from the uncle's apartment. Freeman and police officers arrived at the apartment where there were about 11 people, including appellant. On cross-examination, Freeman was asked if appellant

3.

was charged with breaking into the uncle's apartment and she responded, "No. He [appellant] was a guest."

{¶ 6} After Freeman's testimony, appellant made a motion for judgment of acquittal pursuant to Crim.R. 29, which was denied. Appellant then testified to the following. He was invited by his uncle to the uncle's Greenbelt apartment on December 29, 2020. Appellant had never been told by anyone that he was not allowed on Greenbelt property, and he was not aware he was on a banned list. On cross-examination when appellant was asked if he understood that he was banned from Greenbelt property, he responded, "No. I'm not banned from Greenbelt. * * * What did I do in order to get banned from the Greenbelt? I have never committed a crime on the Greenbelt."

{¶ 7} Appellant was found guilty of criminal trespass. In the trial court's July 20, 2021 Decision and Judgment Entry, the court noted appellant argued he was a privileged invitee of a tenant, and appellant relied on case law where the court held a landlord is divested of the possessory interest in property when a lease is executed. However, the trial court was persuaded by *State v. Smith*, 2d Dist. Montgomery No. 25048, 2012-Ohio-4861, which held when an invitee has previously been in trouble at a multi-unit property, the property owner or agent has an obligation to protect all of the tenants' rights of quiet enjoyment, and that obligation surpasses the right of a certain tenant to invite the offending person onto the property. *Id.* at ¶ 17. The trial court held "[i]n essence, the

4.

decisions not aligned with *Smith* confer the invited guest with third party beneficiary status when they should not."

{¶ 8} The trial court found Freeman's testimony credible, including that she had observed appellant on prior occasions in vacant Greenbelt units, she had informed him multiple times that he was not permitted to return to Greenbelt, and appellant's name was placed on a printed banned list. The court observed that appellant, during cross-examination, did not accept that Freeman had the right to exclude him from Greenbelt property because appellant had been invited by his uncle. The court noted the unrebutted testimony was that appellant was invited to Greenbelt by his uncle. Yet, the court found it was Freeman's responsibility to protect Greenbelt property and the right of quiet enjoyment of all of the tenants. The trial court concluded "[d]espite having been properly notified [appellant] without privilege entered the property of the Greenbelt Apartments on December 29, 202[0]."

{¶ 9} The trial court sentenced appellant to serve 30 days in jail, which was suspended, and ordered appellant to pay costs. Appellant timely appealed.

### Criminal Trespass/Privilege

{¶ 10} R.C. 2911.21 reads, in pertinent part:

(A) No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another;

(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, * * * when the offender knows the offender is in violation of any such restriction or is reckless in that regard;

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders * * *;

(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either * * * [.]

* * *

(F) As used in this section:

* * *

(2) "Land or premises" includes any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof.

**{¶ 11}** Privilege is defined, in R.C. 2901.01(A)(12), as "an immunity * * * or right conferred by law, bestowed by express or implied grant, arising out of status * * * or relationship, or growing out of necessity."

### First Assignment of Error

**{¶ 12}** Appellant asserts his conviction for criminal trespass was not supported by sufficient evidence, or in the alternative was against the manifest weight of the evidence, because he was never served with written notice that he was banned from the property.

**{¶ 13}** Appellant argues the issue concerns the adequacy of the notice that he was given and/or that he received which banned him from Greenbelt property. Appellant contends Freeman testified she verbally notified him many times that he needed to leave Greenbelt property, but she never gave him a written notice. Appellant maintains without written notice that he was prohibited from entering Greenbelt property, the state failed to prove that he was restricted from entering Greenbelt property. Appellant submits the state failed to prove an element of criminal trespass, "to wit: [appellant] could not knowingly enter the premises of another knowing that he was violating a restriction * * * if he had never been notified of the restriction. (R.C. 2911.21(A)(2) paraphrased)." Appellant cites to Civ.R. 41, which describes methods of service, in support of his position that verbal notice does not meet any standard for service of process.

7.

{¶ 14} The state counters that written notice is not an element of the crime of criminal trespass which it must prove. The state also contends appellant's reliance on the Ohio Rules of Civil Procedure is misplaced.

**Analysis**

{¶ 15} Upon review, the record shows the state presented evidence at trial that Freeman, as the manager of Greenbelt, had verbally notified appellant on numerous occasions that he was banned from Greenbelt property, and appellant's name was on the banned list posted by the office door. Appellant testified he was never told by anyone that he was not allowed to be on Greenbelt property, and he never saw the banned list.

{¶ 16} We find the evidence is undisputed that appellant did not receive written notice that he was banned from Greenbelt property. We further find there is no mandate under R.C. 2911.21 which requires written notice. Since written notice is not an element of criminal trespass, it is unnecessary for us to undertake an analysis of the sufficiency of the evidence or manifest weight of the evidence as to appellant's assertion that he was never served with written notice that he was banned from the property. Accordingly, we find appellant's first assignment of error not well-taken.

**Second Assignment of Error**

{¶ 17} Appellant asserts the trial court abused its discretion when it found him guilty of criminal trespass. Appellant submits he arguably had privilege to be on Greenbelt property as an invitee of his uncle, a legitimate Greenbelt tenant. In support,

8.

appellant relies on *State v. Hermann*, 11th Dist. Portage No. 95-P-0044, 1996 WL 210782 (March 8, 1996), and distinguishes *State v. Scott*, 2d Dist. Montgomery No. 19902, 2004-Ohio-271. Appellant argues that without notice of a restriction to enter Greenbelt property, we should find he had permission to be on the property, and he was able to assert the defense of privilege to the allegation of criminal trespass.

{¶ 18} The state counters appellant's uncle did not testify at trial to confirm that appellant had been invited to the property. The state observes the trial court found that even if appellant was an invited guest, he was without privilege to be on Greenbelt property.

{¶ 19} Upon review, although appellant contends the trial court abused its discretion in finding him guilty because he arguably had privilege to be on Greenbelt property, he is, in effect, arguing there was insufficient evidence to convict him of criminal trespass.

{¶ 20} Whether a conviction is supported by sufficient evidence is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A question of law is reviewed de novo by an appellate court. *See State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16, quoting *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2d Dist.1992). An appellate court must decide whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of the accused's guilt

9.

beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶ 21} Here, we must determine whether the state presented sufficient evidence to establish all of the elements of criminal trespass, including whether appellant was without privilege to be on Greenbelt property. In order to reach that determination, we will consider several cases which are germane to appellant's situation in that the basic premise is the same: a non-tenant had been banned from apartment property and thereafter the non-tenant was again on the property and charged with criminal trespass.

### State v. Hermann

{¶ 22} Hermann was convicted of criminal trespass after she visited her boyfriend at his apartment. *Hermann*, 11th Dist. Portage Nos. 95-P-0044 and 95-P-0045, 1996 WL 210782, at * 1. Hermann had been told by the owner of the apartment building on two occasions that she was no longer permitted on the property.[1] *Id.* Notwithstanding, Hermann "was found 'on the complex,' but the factual stipulation does not identify the specific location, whether she was found in a common area, a restricted area or in [her boyfriend's] apartment." *Id.* Hermann claimed she could not be guilty of criminal trespass as she was invited by her boyfriend, who was a lawful tenant. *Id.*

{¶ 23} The Eleventh District Court of Appeals found Hermann was not guilty of criminal trespass as she had permission to be on the property, and she properly asserted

---

[1] No reasons are set forth as to why Hermann was banned from the property.

the defense of privilege. *Id.* at * 2. The court cited to three cases in support of its finding, including *State v. Herder*, 65 Ohio App.2d 70, 74, 415 N.E.2d 1000 (10th Dist.1979), where the *Herder* court held "'it is possible for a person to commit a trespass with respect to property of which he is the owner or part owner. Trespass is an invasion of the possessory interest of property, not an invasion of title.'" *Hermann* at * 2. The *Hermann* court then concluded "[u]nder applicable property laws, the owner [of rental property] sacrifices his possessory interests in the property to the renter, and he cannot prohibit a tenant from inviting guests to the tenant's abode." *Id.*

### *State v. Smith*

{¶ 24} Smith was convicted of criminal trespass at Marvin Gardens, which were apartments where his girlfriend was a tenant. *Smith*, 2d Dist. Montgomery No. 25048, 2012-Ohio-4861, ¶ 1, 13. Smith had previously been told that he was not permitted on the property, by the manager, because Smith had been fighting with his girlfriend's son and damaged the apartment. *Id.* at ¶ 3. Smith returned to Marvin Gardens to visit his girlfriend, but "a short time later, [the girlfriend] called the police from the fire station across the street and reported that [Smith] was in her apartment and she wanted him to leave." *Id.* at ¶ 4.

{¶ 25} On appeal, Smith claimed he had his girlfriend's permission to be on the property, which took precedence over the property owner's right to exclude him. *Id.* at ¶

13. Smith relied on several cases in support of his position, including *Hermann* and *State v. Hites*, 3d Dist. Allen No. 1-2000-22, 2000 WL 1114809 (Aug. 8, 2000).

{¶ 26} The Second District Court of Appeals stated:

The theory of the decisions on which [Smith] relies appears to be that because the tenant of leased property has the right to the exclusive possession of the premises, * * * and inasmuch as "[t]respass is an invasion of the possessory interest of property, not an invasion of title," *State v. Herder*, 65 Ohio App.2d 70, 74, 415 N.E.2d 1000 (10th Dist.1979), the tenant's permission to enter the property cloaks a "trespassed" invitee with the privilege to be on the premises that R.C. 2911.21(A)(3) requires. [*Columbus v.*] *Parks*[, 10th Dist. Franklin No. 10AP-574, 2011-Ohio-2164]. *Id.* at ¶ 15.

{¶ 27} The *Smith* court then held:

[W]e consider not only the rights of a particular tenant to invite guests to her home, but also the rights of the other tenants of a multi-unit premises to the quiet enjoyment of their own residences. A landlord has a common law duty to provide for the health and safety of all of his tenants, as well as to ensure their quiet enjoyment of the premises. "'In Ohio, a covenant of quiet enjoyment is implied into every lease contract for realty.'" *Davis v. Sean M. Holley Agency, Inc.*, 2d Dist. Montgomery No. 23891, 2010-Ohio-

12.

5278, ¶ 12, quoting *Dworkin v. Paley*, 93 Ohio App.3d 383, 386, 638 N.E.2d 636 (8th Dist.1994). Allowing one tenant's invitation to trump the landlord's ability to discharge that duty can deprive other tenants of their right to quiet enjoyment.

[The manager] did not [bar Smith] from Marvin Gardens arbitrarily. He did so following [Smith's] arrest at [his girlfriend's] apartment after a fight with [the girlfriend's] son, damaging the apartment and resulting in the police being called. To allow the possibility of such behavior to reoccur in the future could put all tenants in danger of their personal safety, and at least presents a significant risk of their inconvenience and annoyance. When an invitee has previously been involved in a disturbance at the property, a property owner or his agent has an obligation to protect all of his tenants' right of quiet enjoyment of the premises. This obligation trumps the right of a particular tenant to invite the offending person to again enter the premises. *Id.* at ¶ 16-17.

### *State v. Scott*

{¶ 28} Scott was convicted of criminal trespass at property owned by the Dayton Metropolitan Housing Authority ("DMHA"). *Scott*, 2d Dist. Montgomery No. 19902, 2004-Ohio-271, at ¶ 2. Prior to his conviction, Scott had been given two trespass notices for causing problems at DMHA property, and was advised not to enter DMHA property.

13.

*Id.* Thereafter, Scott was on DMHA property helping his girlfriend, who was a tenant, move out. *Id.* at ¶ 2-3. Scott was seen carrying items out of the girlfriend's apartment building and placing them into another person's car. *Id.* at ¶ 3. An officer checked the license plate of the car and determined the car was known to be driven by someone who was barred ("barred person") from DMHA property. *Id.* Both Scott and the barred person were arrested for criminal trespass. *Id.* On appeal, Scott claimed the state failed to prove he was on DMHA property without privilege as he was an invited guest of a tenant, and he remained within the lawful and proper bounds of his invitation. *Id.* at ¶ 7.

{¶ 29} The Second District determined Scott's case was governed by *Dayton v. Gaessler*, 2d Dist. Montgomery No. 18039, 2000 WL 1879103 (Dec. 29, 2000). The *Gaessler* court determined that "a DMHA tenant derives her right to invite guests from DMHA itself, thereby preventing the tenant from giving permission to an individual listed on the trespass list to enter the property over DMHA's objection." *Id.* at * 4.

{¶ 30} The *Scott* court found the *Gaessler* case was not distinguishable from Scott's case, as "we explicitly stated that the tenant derived her rights as a tenant from DMHA and, consequently, her rights to invite guests were subject to DMHA's right to preclude certain guests by means of the criminal trespass policy." *Scott* at ¶ 18. The *Scott* court noted Scott's girlfriend "was aware of the DMHA criminal trespass policy and of the fact that Scott had been given trespass notices, thus barring him from DMHA property, pursuant to that policy." *Id.* at ¶ 19. The court concluded Scott's girlfriend

14.

"could not validly invite Scott, an individual on the criminal trespass list, to her DMHA residence in contravention of DMHA's trespass notices to him. Accordingly, we find no error * * * in the determination that Scott was on DMHA property 'without privilege.'" *Id.*

### State v. Hites

{¶ 31} Hites was convicted of criminal trespass in violation of R.C. 2911.21(A)(1), at Lima Estate Apartments. *Hites*, 3d Dist. Allen No. 1-2000-22, 2000 WL 1114809, * 1. Hites had previously been notified that his presence at Lima Estates "was strictly forbidden."[2] *Id.* When Hites was arrested and charged, he was in an apartment leased by a tenant, and at the tenant's invitation. *Id.*

{¶ 32} The Third District Court of Appeals, cited *Hermann*, noting it had nearly identical facts. *Id.* at * 2. The *Hites* court agreed with the *Hermann* analysis, and held the owner of an apartment complex cannot prohibit guests, invited by a tenant, from being present on the property, as "[t]he criminal trespass statute does not provide a substitute for other adequate remedies in the event that the tenants or their guests interfere with the rights of others and/or violate a valid condition of the lease agreement." *Id.* The *Hites* court noted "[i]n a prosecution for criminal trespass, the state is required to prove that the accused acted without privilege." *Id.* The court found the state failed to establish lack of privilege beyond a reasonable doubt. *Id.*

---

[2] No reason was set forth as to why Hites was banned from the property.

15.

**Analysis**

{¶ 33} A review of the foregoing cases reveals *Hermann* was decided by the Eleventh District Court of Appeals, and *Hites* was decided by the Third District Court of Appeals, who agreed with the *Hermann* analysis. *Smith* and *Scott* were both decided by the Second District Court of Appeals. The rulings in *Hermann* and *Hites* are contrary to and conflict with the holdings in *Smith* and *Scott*. We note all four of these cases lack precedential effect in this district, and neither appellant nor the state cited any privilege/invitee criminal trespass cases which are binding. Likewise, we did not uncover any controlling cases in our independent research.

{¶ 34} A review of the trial court record shows, and we find: there is contested evidence that appellant had been banned from Greenbelt property by Freeman prior to December 29, 2020; there is uncontested evidence that Freeman received complaints from other Greenbelt tenants about the partying, trash, and noise coming from the uncle's apartment on December 29, 2020; there is undisputed evidence that when appellant was arrested for criminal trespass, he was a guest in his uncle's Greenbelt apartment on December 29, 2020; there is no evidence that appellant was the source of the trash and noise coming from his uncle's apartment on December 29, 2020; and there is no evidence that appellant was in his uncle's apartment on December 29, 2020 for unlawful purposes.

{¶ 35} Upon consideration of the evidence presented at the bench trial and the case law, we conclude appellant's situation is more akin to the circumstances of the

16.

invitees in *Hermann* and *Hites*, than to the circumstances found in *Smith* and *Scott*. Like *Hites*, appellant was arrested and charged with criminal trespass while in a tenant's apartment at the tenant's invitation, but unlike *Smith*, appellant's guest invitation had not been revoked by the tenant, when he was arrested and charged with criminal trespass. Thus, we conclude *Hermann* and *Hites* are more persuasive than *Smith* and *Scott*. We further conclude the *Hites* court properly construed R.C. 2911.21 when it observed the state was required to prove the accused acted without privilege.

{¶ 36} In light of these conclusions, in order for the state to prove appellant committed a trespass in violation of R.C. 2911.21, the state was required to prove, beyond a reasonable doubt, that appellant was without privilege to enter and remain in his uncle's apartment despite having been generally barred from the Greenbelt apartment complex.

{¶ 37} Viewing the evidence in the record in a light most favorable to the state, we find that no rationale trier of fact could have found beyond a reasonable doubt that appellant was without privilege to be in his uncle's Greenbelt apartment on December 29, 2020. It is noteworthy that the state failed to offer any evidence to show that appellant's uncle was not authorized or allowed to grant appellant that privilege. *Compare Scott* (holding that a tenant's right to invite guests into their individual rental unit can be limited through applicable regulations or contractual lease restrictions). In fact, the state's witness, Freeman, the Greenbelt manager, testified appellant was a guest in the

17.

uncle's apartment. Thus, we find the state failed to present sufficient evidence to show appellant was without privilege to enter and remain as an invited guest in his uncle's Greenbelt apartment on December 29, 2020. We therefore find the trial court erred when it found appellant guilty of criminal trespass. Accordingly, appellant's second assignment of error is well-taken.

{¶ 38} With respect to the conflict which exists between our decision, the decision in *State v. Hermann*, 11th Dist. Portage No. 95-P-0044, 1996 WL 210782, the decision *State v. Hites*, 3d Dist. Allen No. 1-2000-22, 2000 WL 1114809 (Aug. 8, 2000) and the contrary holdings in *State v. Smith*, 2d Dist. Montgomery No. 25048, 2012-Ohio-4861 and *State v. Scott*, 2d Dist. Montgomery No. 19902, 2004-Ohio-271, we note that Section 3(B)(4), Article IV of the Ohio Constitution provides:

> [w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination.

{¶ 39} The Ohio Supreme Court, in *Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 596, 613 N.E.2d 1032 (1993), set forth three requirements which must be met in order to certify a case:

18.

First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law-not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends in conflict with the judgment on the same question by other district courts of appeals.

{¶ 40} We find, sua sponte, our judgment in this appeal is in conflict with decisions of the Second District Court of Appeals. *See State v. Smith*, 2d Dist. Montgomery No. 25048, 2012-Ohio-4861 and *State v. Scott*, 2d Dist. Montgomery No. 19902, 2004-Ohio-271.

{¶ 41} We, therefore, sua sponte certify a conflict to the Supreme Court of Ohio, on the following questions for review:

Can a rental property owner, or the owner's agent (landlord or agent), prohibit a person from entering onto the property such that a tenant of that property is prohibited from inviting that person to the tenant's residence or apartment?

Must the owner of rental property, or an agent (landlord or agent), sacrifice possessory interests in the property to a tenant so the tenant can

invite a banned or "trespassed" person to the tenant's residence or apartment?

**Conclusion**

**{¶ 42}** We certify a conflict to the Ohio Supreme Court, and the parties are directed to Sup.R.Pract. 8.01 for instructions on how to proceed.

**{¶ 43}** The judgment of the Toledo Municipal Court is reversed and vacated. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                _____
                                              JUDGE

Myron C. Duhart, P.J.
CONCUR.                                 _____
                                              JUDGE

Gene A. Zmuda, J.                 _____
CONCURS IN JUDGMENT               JUDGE
AND WRITES SEPARATELY.

**ZMUDA, J.**

**{¶ 44}** I concur with the majority's decision reversing the trial court's judgment convicting appellant of one count of criminal trespass in violation of R.C. 2911.21, which prohibited appellant from entering and remaining on the premises of another without privilege to do so. However, I believe the majority does not accurately identify that it is the state's burden to show that appellant lacked privilege as an element of the charged offense, and does not accurately resolve the issue of who may grant or deny appellant that privilege as a matter of law. I write separately to address these issues.

## I.    Law and Analysis

**{¶ 45}** In his second assignment of error, appellant argues that the trial court "abused its discretion" when it found him guilty of criminal trespass. Specifically, appellant argues that he had privilege to enter and remain on the premises and, therefore, his conviction constituted error. The majority correctly concludes that despite identifying the alleged error as being subject to an abuse of discretion review standard, appellant actually argued that the state failed to introduce sufficient evidence regarding the lack of privilege element of the alleged offense.

**{¶ 46}** While I concur with the majority that the state failed to introduce sufficient evidence to support appellant's conviction, I have two concerns with the majority's analysis in reaching this conclusion. First, I believe that the majority does not clearly state that the lack of privilege is an element of a criminal trespass conviction that the state

21.

must prove as a matter of law.  Second, I believe that the majority's analysis incorrectly uses the facts of the case to determine the applicable legal standard.  I believe the correct analysis requires this court to determine the correct legal standard and then decide whether the underlying facts satisfy that standard.  I address these issues in turn.

**A. The state bears the burden of showing a defendant lacked privilege to enter and remain on the premises to support a conviction for criminal trespass under R.C. 2911.21(A)(1).**

{¶ 47} Appellant's second assignment of error frames the issue of privilege as an affirmative defense to a criminal trespass charge.  While the majority ultimately concludes that lack of privilege is an element of the criminal trespass offense rather than an affirmative defense, it only passively reaches that conclusion by finding the facts of the present case are "akin" to the facts underlying *State v. Hites,* 3d Dist. Allen No. 1-2000-22, 2000 WL 1114809, *1 (Aug. 8, 2000), a decision that reached the same conclusion.  By declining to affirmatively state that the lack of privilege is an element of a criminal trespass offense that the state must prove beyond a reasonable doubt, the majority decision suggests that whether privilege is an element of the offense or an affirmative defense is a fact-specific inquiry rather than a matter of law.  This is incorrect.

{¶ 48} An offender commits a criminal trespass when they violate R.C. 2911.21(A)(1), which states:

(A) No person, *without privilege to do so,* shall do any of the following:

22.

(1) Knowingly enter or remain on the land or premises of another[.]

(emphasis added).

Clearly, the lack of privilege is an essential element of a criminal trespass offense that the state must prove beyond a reasonable doubt in all criminal trespass claims alleged under R.C. 2911.21(A)(1). *See State v. Lyons,* 18 Ohio St.3d 204, 480 N.E.2d 767 (1985); *In re. C.J.,* 6th Dist. Huron No. H-09-003, 2009-Ohio-5617, ¶ 11-16. This is the only logical conclusion as the lack of privilege is what makes entering the premises a trespass. Otherwise, the statute would, absurdly, make it illegal for any person to knowingly enter or remain on the premises of another.

{¶ 49} The majority's use of analogous case authority to state this issue of law unnecessarily complicates the issue and detracts from the actual issue raised in this appeal—that is, whether the lessor or the lessee has the authority to grant privilege to another to enter and remain in the leased unit? For this reason, I concur with the majority that the lack of privilege must be proven by the state but would rely on the direct authority cited above.

**B. Unless otherwise stated, a lease agreement grants the lessee the right to admit or exclude others from the leased unit even when the lessor has barred that individual from entering the premises.**

{¶ 50} As to the merits of this appeal, appellant argues that the state introduced insufficient evidence to support his criminal trespass conviction. The majority finds

23.

appellant's assignment well-taken and reverses the trial court's judgment. I concur with the majority's decision but for reasons other than those stated by the majority.

{¶ 51} The relevant facts in this case are undisputed. Freeman, acting as property manager on behalf of the lessor, Greenbelt Apartments, barred appellant from the premises at some point prior to his arrest.[3] Appellant was subsequently discovered in his uncle's rental unit after Freeman responded to a noise complaint. Appellant testified at trial that his uncle had invited him to the rental unit earlier that day.

{¶ 52} As the basic facts were not in dispute, the only issue before the trial court was whether the state had introduced sufficient evidence to show that appellant lacked privilege to enter and remain on the premises. In its closing argument, the state argued that Freeman barring appellant from the Greenbelt premises applied to both the common areas as well as all individual rental units. In response, appellant argued that his uncle's invitation to the leased unit superseded his ban from the premises. Each party cited case authority which arguably supported their position regarding who could grant him privilege to enter his uncle's apartment.

{¶ 53} Appellant cited both *State v. Hermann,* 11th Dist. Portage Nos. 95-P-0044, 95-P-0045, 1996 WL 210782 (March 8, 1996) and *State v. Hites,* 3d Dist. Allen No. 1-2000-22, 2000 WL 1114809, in which the Third and Eleventh District Courts of Appeals, respectively, concluded that a lessee retains the authority to grant or deny privilege to

_____

[3] At trial, appellant argued only that he was unaware of the ban and that any ban was unwarranted. He did not dispute the existence of the ban.

24.

another person to enter their own rental unit despite the lessor's ban of that person from the premises. In turn, the state cited *State v. Smith,* 2d Dist. Montgomery No. 25048, 2012-Ohio-4861, in which the Second District Court of Appeals held that the lessor's obligation to ensure the quiet enjoyment of other tenants by barring a disruptive individual from the premises "trumps the right of a particular tenant to invite the offending person to again enter the premises." *Id.* at ¶ 17.

{¶ 54} In light of the apparent conflict between the authorities cited by the parties, the trial court reserved its judgment and permitted the parties to submit supplemental closing briefs to address the privilege issue. Appellant filed his supplemental brief on July 6, 2021. The state did not file a supplemental brief.

{¶ 55} On July 20, 2021, the trial court memorialized a written judgment entry finding appellant guilty of criminal trespass. In its entry, the trial court noted its consideration of appellant's argument stating that appellant "correctly cite[d] several cases where the courts have determined that a landlord is divested of its possessory interest in the property when a lease is executed." Nevertheless, the trial court was "persuaded by the holding in [*Smith*]" finding that a lease agreement did not divest a landlord of the right to exclude others from the leased unit. Because the evidence introduced at trial showed that Freeman had barred appellant from the premises, the trial court found appellant lacked privilege to be in his uncle's unit and, therefore, was guilty of criminal trespass.

25.

**{¶ 56}** At appellant's sentencing later that same day, the trial court expressly recognized the apparent conflict between the cited authority stating:

> *My understanding of the law* is that if a landlord tells you you can't be there, even if your uncle tells you that you can be, that you are prohibited from going to that place. And I believe the manager, who placed you on the banned list, did inform you of it, and you chose to ignore that. *That's the reason I found you guilty. Having said that, I could be wrong.*
>
> (emphasis added).

The trial court's resolution of this issue of law is precisely what is before this court and must be clearly resolved in this appeal. I believe the majority's analysis does not clarify the applicable law regarding who may grant the applicable privilege—the lessor or the lessee—and, as it did with determining whether the lack of privilege was an element of the offense, suggests that this issue is fact-specific.

**{¶ 57}** To reach its conclusion, the majority found that because appellant was not the source of the noise complaint which led to his discovery in the unit, that this scenario is factually similar to *Hermann* and *Hites*. Applying those holdings to the present case, the majority holds that appellant's uncle retained the right to grant him the privilege to enter the rental unit. The connotation invited by this conclusion, however, is that had appellant been the source of the noise complaint, that the majority would find *Smith* controlling and hold Freeman's duty to protect the quiet enjoyment authorized her to

26.

grant or deny appellant's privilege to be in the private unit. By establishing the appropriate standard based on factual similarities, the majority has not resolved the issue of law present in this appeal and has invited the potential for an intra-district conflict should another panel of this court elect to follow *Smith*. For these reasons, I write separately and perform the necessary analysis to resolve this issue here.

{¶ 58} Sufficiency of evidence is an issue of law. *State v. Harper,* 2017-Ohio-1395, 89 N.E.3d 141 (6th Dist.). "Sufficiency of the evidence is a determination of adequacy, and a court must consider whether the evidence was sufficient to support the conviction as a matter of law." *Id.* at ¶ 38. To perform this review here, we must review the status of the law regarding the privilege element of the alleged offense.

{¶ 59} In *Hermann,* the 11th District Court of Appeals aptly described the relevant interests of the lessor and lessee regarding the granting of privilege to others to enter the leased unit. There, the court held that "[t]respass is an invasion of the possessory interest of property, not an invasion of title." *Id.* at *1, citing *State v. Herder,* 65 Ohio App.2d 70, 74 (10th Dist.1979). By relinquishing its *possessory* rights to the rental unit, "the owner sacrifices [their] possessory interests in the property to the renter, and [they] cannot prohibit a tenant from inviting guests to the tenant's abode." *Id.* Put simply, the possessory rights granted to a tenant through the lease of a rental unit includes the right to grant privilege to others to enter the unit as a matter of law.

27.

**{¶ 60}** The state's argument that the lessor must retain that right to protect the quiet enjoyment of other tenants is unavailing. In Ohio, "a covenant of quiet enjoyment is implied in every lease contract for realty." *Cincinnati Ins. Co. v. Evans,* 6th Dist. Wood No. WD-09-012, 2010-Ohio-2622, ¶ 51. That covenant is breached when a landlord "substantially interferes with the beneficial use of the premises by the tenant." *Id.*, citing, *Howard v. Simon,* 18 Ohio App.3d 14 (8th Dist.1984). However, when one tenant's conduct breaches the quiet enjoyment of other tenants, the appropriate remedy is a forcible entry and detainer action against the offending tenant. *See S&M Properties v. Gerhardt,* 2d Dist. Montgomery No. 15884, 1996 WL 666707 (Nov. 15, 1996) (holding that tenant whose conduct breached other tenant's quiet enjoyment of the premises was subject to forcible entry and detainer action). Therefore, Freeman had the ability to evict appellant's uncle from the premises if appellant's presence breaches other tenants' right of quiet enjoyment. Freeman's right to seek an eviction is immaterial, however, to determine which party had the right to grant or revoke appellant's privilege. For these reasons, I find *Smith* is unpersuasive on this issue and that appellant's uncle, as a matter of law, was the party authorized to grant or deny appellant the privilege to enter his rental unit.

**{¶ 61}** Importantly, this is not to say that a tenant's authorization to grant privilege to another to enter and remain in their individual unit is absolute under all circumstances. In its brief, the state cited *State v. Scott,* 2d Dist. Montgomery No. 19902, 2004-Ohio-

28.

271, ¶ 2, a case where the lessor retained the right to exclude guests from the individual unit through the terms of the lease agreement. The court held that this contractual retention of the right to exclude was valid and that the lessor's barring of an individual from the premises was sufficient to support that individual's criminal trespass conviction. *Id.* at ¶ 19.

{¶ 62} In that scenario, I agree that the lessee has no right to admit or exclude others and that a lessor's barring an individual from the premises would show the lack of privilege necessary to support a criminal trespass conviction. No such evidence was introduced in the present case. Therefore, the holding in *Scott* is clearly distinguishable and provides no persuasive authority on which this court can rely in the present appeal.

{¶ 63} Having established who was authorized to grant appellant privilege to be present in his uncle's rental unit, I turn to whether the state introduced sufficient evidence to show that appellant lacked that privilege. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support

29.

a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 64} At trial, the state did not introduce any evidence that appellant's uncle had excluded him from the rental unit. To the contrary, Freeman testified during the state's case-in-chief that appellant was his uncle's "guest," suggesting that appellant had privilege to enter the rental unit through his uncle's invitation. Viewing this evidence in a light most favorable to the state, I find that the state did not introduce sufficient evidence to show that appellant lacked privilege to enter and remain in Henry's rental unit.

{¶ 65} In light of this analysis, I find that this court's decision conflicts with the Second District Court of Appeals' resolution of the same issue of law identified in *State v. Smith,* 2d Dist. Montgomery No. 25048, 2012-Ohio-4861. I concur with the majority's certification of this conflict to the Ohio Supreme Court pursuant to Section 3(B)(4), Article IV of the Ohio Constitution. However, I find that the issue in this case is distinguishable from the issue addressed in *State v. Scott,* 2d Dist. Montgomery No. 19902, 2004-Ohio-271 and would not certify a conflict with that decision.

## II. Conclusion

{¶ 66} For these reasons, I concur with the majority's conclusion that the state failed to introduce sufficient evidence to support appellant's conviction for criminal

trespass and ordering appellant discharged.  I find appellant's second assignment of error

well-taken but for reasons other than those stated by the majority.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.